IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FAYE BEATRICE HAYES,

    Plaintiff,

    v.

MARYLAND TRANSIT
ADMINISTRATION, *et al.*,

    Defendant.

Civil Action No. RDB-18-0691

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Faye Beatrice Hayes ("Plaintiff" or "Hayes") brings this *pro se* action against Defendants the State of Maryland, the Maryland Transit Administration ("MTA") and several MTA employees in their individual and official capacities (collectively, "Defendants"), alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.;* the American with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12112, *et seq.*; the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq.*; the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann., State Gov't, § 20-602 (equal opportunity policy statement), 20-606 (employment discrimination), 20-607 (unlawful compensation),[1] 20-702 (fair housing);[2] and conspiracy to interfere with civil rights, 42 U.S.C. § 1985. Currently pending before this Court is Defendant's Motion to

---

[1] An unlawful compensation claim under Maryland law requires a plaintiff to allege that her job was similar to a higher paying job occupied by employees outside of her protected class. *Crockett v. SRA Intern*, 943 F. Supp. 2d 565, 573 (D. Md. 2013). Hayes has failed to state a claim under this provision because she makes no allegations of this kind.

[2] Although the Amended Complaint invokes Section 20-702, it alleges no discernible basis for a violation of Maryland's fair housing laws. Accordingly, Hayes has failed to state a claim under this provision.

Dismiss, or, in the Alternative, Motion for Summary Judgment (ECF No. 17); Plaintiff's Motions to Strike Affidavit of James C. Newton, Sr. (ECF No. 22) and Affidavit of Bart P. Plano (ECF No. 23); and Plaintiff's Motion for Leave to File Sur-reply (ECF No. 28). The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016).

As further explained below, Defendant's Motion to Dismiss, or, in the Alternative, for Summary Judgment (ECF No. 17) is GRANTED. Specifically, Summary Judgment is ENTERED in favor of Defendants with respect to Hayes' ADA, FMLA, Title VII, and MFEPA retaliation claims. All of Hayes' remaining claims are DISMISSED. Plaintiff's Motions to Strike Affidavit of James C. Newton, Sr. (ECF No. 22) and Affidavit of Bart P. Plano (ECF No. 23) are DENIED. Plaintiff's Motion for Leave to File Sur-reply (ECF No. 28) is DENIED.

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. V. Nat' Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). Further, as a *pro se* Plaintiff, this Court has "liberally construed" Hayes' pleadings and held them to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Alley v. Yadkin County Sheriff Dept.*, No. 17-1249, 698 F. App'x 141, 2017 WL 4415771 (4th Cir. Oct. 5, 2017).

On July 27, 1994 Hayes began working at the MTA as a Bus Operator; she became a Bus Supervisor in September 2005.[3] (Am. Compl. ¶¶ 2, 3, ECF No. 14.) She alleges that she suffers from an "invisible disability" stemming from an incident that occurred prior to her employment with the MTA which severely limits her ability to engage in daily activities. (*Id.* at ¶ 4.) The incident required several surgeries and other medical procedures and forced her to take a leave of absence from work, ending in December 2016. (*Id.* at ¶ 30, 33.) Since then, Hayes' physical condition caused her to have sporadic, unforeseeable absences from work. (*Id.* at ¶ 51.) Hayes Complaint catalogues several alleged incidents of discrimination and rights violations related to her disability and need for intermittent leave.

Request for Accommodation

Upon returning to work in December 2014 following a series of medical evaluations, Hayes requested an ergonomic chair as an accommodation for her disability. (*Id.* at ¶ 33-34.) On February 27, 2016 Hayes asked MTA representative Bart Plano for assistance obtaining the chair. (*Id.* at ¶ 35.) On March 1, 2016, the MTA provided Hayes with a catalog of chairs and allowed her indicate which chair she preferred. (*Id.* at ¶ 35.) On September 7, 2016, the chair arrived. (*Id.* at ¶ 37.) Hayes complains that a co-worker sat in her ergonomic chair at a mandatory staff meeting without her permission. (*Id.* at ¶¶ 55-59.)

Scheduling Issues

Hayes alleges that her requests for time off were handled in a discriminatory manner. On July 5, 2016, Terri Gorman, Chief Controller, permitted Hayes to trade days off with another employee. (*Id.* at ¶ 38.) Subsequently, Hayes was no longer permitted to trade days

---

[3] Although Hayes was required to seek leave of this Court before filing an Amended Complaint nearly two months after commencing this action, this Court liberally construes Hayes' submissions and draws the background of this case from her most recent pleading.

off with other employees. (*Id.* at ¶ 40.)   At the same time, Ms. Gorman altered company policy governing days off to allow another employee, David Powell, to obtain nine days off to coach his baseball team. (*Id.* at ¶¶ 42-44.)   In about September 2016, Hayes sought to change her shift so that she could arrive at 6:00 am rather than 4:00 am.  (*Id.* at ¶ 53.)  Rather than grant this request outright, Gorman directed her to swap her work hours with another employee whose shift began at 6:00 am. (*Id.* at ¶ 54.) Hayes also complains that she was the only employee on her shift scheduled to work on Thanksgiving Day 2016. (*Id.* at ¶ 73.)

On December 9, 2016, Powell emailed employees and explained that the MTA would no longer schedule shifts according to employee seniority as it had done in the past.  (*Id.* at ¶ 113.)   As a result, other employees with lesser seniority than Hayes were able to takes weekends off, while her days off from work fell on Wednesdays and Thursdays.  (*Id.* at ¶¶ 114-15.)

Medical Leave

Hayes' Complaint opines on several instances of alleged FMLA interference.   On April 13, 2016, Hayes' request for FMLA leave was denied. (*Id.* at ¶ 48.)  Shortly thereafter, she received approval to take FMLA leave through April 21, 2017. (*Id.* at ¶ 49.)   On September 21, 2016 Gorman implemented a new policy requiring employees to provide two-hours' notice of their requests for FMLA leave.  (*Id.* at ¶ 50.)   In response, Hayes provided a note from her surgeon to support her request to be allowed to provide notice of her leave within one hour of her shift.  (*Id.* at ¶ 51.)  Gorman did not grant this request.  (*Id.* at ¶ 52.)

Hayes sought leave from work on the evening of Saturday, November 12, 2016, because of her medical condition.  (*Id.* at ¶ 81.)  Her employer granted her leave and others

worked in her stead.  (*Id.* at ¶¶ 83-84.)  When she returned on November 15, 2016, James C. Newton, Sr., Terri Gorman, and David Powell held a meeting with Hayes.  (*Id.* at ¶ 86.)  At that meeting, Newton asked if she had called out of work the previous Saturday, and explained that he had reason to believe that she had attended an event while she claimed to be on medical leave.  (*Id.* at ¶¶ 87-88.)  This greatly upset Hayes: her heart rate increased, her breath quickened, and her muscles tightened.  (*Id.* at ¶ 89.)  In her car, she experienced an "emotional, mental breakdown."  (*Id.* at ¶ 91.)  She drove to Concentra Medical Center for treatment, but was unable to obtain medical care.  (*Id.* at ¶¶ 92-93.)

### Internal Complaints

Following these incidents, Hayes alleges that she made several internal complaints to various MTA employees.  On November 16, 2016, she complained to Senior Executive Sean Adgerson and Bart P. Plano about "unlawful employment action."  (*Id.* at ¶ 10.)  In response, Adgerson explained that he "knew all about the chair."  (*Id.*)  The next day, Hayes attempted to contact MTA Administrator Paul Comfort to register another complaint, but her comments were re-routed to Adgerson and Plano.  (*Id.* at ¶ 12.)  Hayes made additional attempts to contact Comfort via email in November and December. (*Id.* at ¶ 13.)  On December 14, 2016, Hayes contacted Senior Executive Peter Tollini to discuss her complaints and warned him that she intended to file charges with the EEOC. (*Id.* at ¶ 22.)  Tollini replied that he "saw the Facebook post."  (*Id.*)

### Employment Termination

After her November 15, 2016 meeting with MTA management, Hayes had difficultly returning to work.  On November 17, 2016 she attended an appointment with her doctor

who issued her a "work slip" with a return date of December 1, 2016. (*Id.* at ¶ 16.) On January 4, 2017, Hayes attended another medical appointment and obtained another work slip with a return date of February 2, 2017. (*Id.* at ¶ 18.)

On November 23, 2016 Hayes was scheduled to attend a "mitigating circumstances conference" to discuss allegations against her for inappropriately using FMLA leave and making false statements to management. (*Id.* at ¶¶ 95-96.) Hayes did not see email correspondence concerning this call until November 27, 2016. (*Id.* at ¶ 94.) Shortly thereafter, Hayes was informed that she had been accused of lying about the circumstances of her leave from work on November 12, 2016. (*Id.* at ¶ 98.) Specifically, her employer claimed that a Facebook picture showed her attending the Park Heights Reunion at the Pimlico Race Track that evening. (*Id.* at ¶ 110.)

Based on these allegations, Hayes was suspended without pay for five days from December 14, 2016 to December 20, 2016. (*Id.* at ¶¶ 111-12.) On December 22, 2016 Hayes filed an initial Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Aff. of Bart P. Plano at ¶ 7, ECF No. 17-2.) On February 3, 2017 Bart Plano, MTA Lead EEOC Compliance Officer, received notice of this Charge. (Def.'s Ex. 1, Attach. 1, ECF No. 17-3.) Hayes also submitted a "Disciplinary Action Appeal Form" to challenge her suspension. (Def.'s Ex. 1, Attach. 3, ECF No. 17-5; Am. Compl. ¶¶ 112, 126.) On this form, Hayes wrote that she "did not attend the reunion, I only dropped someone off" and alleged that she was being retaliated against for taking FMLA leave. (ECF No. 17-5.) Subsequently, Hayes received a letter from her employer dated January 13, 2017 captioned "Notification of Resignation without Notice." (Def.'s Ex. 1, Attach. 4, ECF No.

17-6; Compl. ¶¶ 25, 128.) The letter explained that she had effectively resigned by failing to contact her employer for five consecutive days about her leave of absence. (Def.'s Ex. 1, Attach. 4; Compl. ¶ 127.)

On January 26, 2017 Hayes filed an Amended Charge of Discrimination with the EEOC. (Aff. of Bart P. Plano at ¶ 7; Am. Compl. ¶ 23.) The EEOC issued her a right to sue letter on December 16, 2017.[4] (Am. Compl. ¶ 23.) On March 8, 2018 Hayes filed this lawsuit. Defendants have filed a Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment. (ECF No. 17.)

## Standard of Review

### I. Motion to Dismiss Pursuant to Rule 12(b)(1)

Defendants assert that some of Plaintiff's claims are barred because Defendants are entitled to immunity under the Eleventh Amendment. This Court treats motions to dismiss based on the Eleventh Amendment under Federal Rule of Civil Procedure 12(b)(1). *See Beckham v. National R.R. Passenger Corp.*, 569 F. Supp. 2d 542 (D. Md. 2008) ("[A]lthough Eleventh Amendment immunity is not a 'true limit' on this Court's subject matter jurisdiction, . . . the Court concludes that it is more appropriate to consider this argument under Fed. R. Civ. P. 12(b)(1) because it ultimately challenges this Court's ability to exercise its Article III power."); *see also Cook v. Springfield Hospital Center*, No. ELH-16-2024, 2016 WL 6124676, at *6 (D. Md. Oct. 19, 2016).

---

[4] In Maryland, a deferral state, a Title VII claim of discrimination must be filed with the EEOC within 300 days of the alleged discriminatory action. *EEOC v. R & R Ventures*, 244 F.3d 334, 338 n.1 (4th Cir. 2001). If the EEOC dismisses the charge, or if the plaintiff requests a right to sue notice, a plaintiff has ninety days from receiving his or her notice of dismissal and right to sue letter to file an action in court. 42 U.S.C. § e-5(f)(1).

A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction challenges a court's authority to hear the matter brought by a complaint. *See Davis v. Thompson*, 367 F.Supp.2d 792, 799 (D. Md. 2005). Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of the evidence, the existence of subject matter jurisdiction. *Demetres v. East West Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999). A challenge to jurisdiction under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted).

## II.     Motion to Dismiss Pursuant to Rule 12(b)(6)

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). While a complaint need not include "detailed factual allegations," it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff

cannot rely on bald accusations or mere speculation. *Twombly*, 550 U.S. at 555.

In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Hall v. DirecTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017). However, a court is not required to accept legal conclusions drawn from those facts. *Iqbal*, 556 U.S. at 678. "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

While federal courts are obliged to liberally construe a *pro se* litigant's claims in applying the above analysis, this requirement "does not transform the court into an advocate." *United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012) (internal quotations and citations omitted). The Fourth Circuit has noted that "[w]hile pro se complaints may 'represent the work of an untutored hand requiring special judicial solicitude,' a district court is not required to recognize 'obscure or extravagant claims defying the most concerted efforts to unravel them.'" *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986)).

### III.     Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, summary judgment is proper "only when no 'reasonable jury could return a verdict for the nonmoving party.'" *Monon Corp. v. Stoughton Trailers, Inc.*, 239 F.3d 1253, 1257 (Fed. Cir. 2001) (quoting *Anderson*, 477 U.S. at 255)). When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Anderson*, 477 U.S. at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249-50. On the other hand, a party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). As this Court has previously explained, a "party cannot create a genuine dispute of material

fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

## ANALYSIS

I.  **Motion to Dismiss, or, in the Alternative, for Summary Judgment**

    a.  **Sovereign Immunity**

In moving to dismiss Hayes' ADA and FMLA claims, the MTA contends that it is entitled to sovereign immunity under the Eleventh Amendment. (Def.'s Mem. Mot. to Dismiss 13, ECF No. 17-1.) This Court recognizes that "the ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." *Bd. of Trs. of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001) (*citing Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000)). Given this guarantee, Congress may abrogate a state's Eleventh Amendment sovereign immunity only where "it both unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional authority." *Garrett*, 531 U.S. at 363 (quoting *Kimel*, 528 U.S. at 73).

The United States Supreme Court has concluded that while Congress certainly intended for the "self-care" provision of the FMLA and Title I of the ADA to apply to the states, Congress did not validly abrogate state sovereign immunity in either case. *Coleman v. Court of Appeals of Maryland*, 566 U.S. 30, 43-44, 132 S. Ct. 1327, 1338 (2012) (plurality opinion) (FMLA); *Garrett*, 531 U.S. at 364, 374 (ADA). Eleventh Amendment immunity thus bars suits for money damages under the self-care provision of the FMLA and Title I of the ADA in federal court against the states, state agencies (and any sub-agencies therein), and state officials. *Coleman*, 566 U.S. at 43-44; *Garrett*, 531 U.S. at 374; *see also McCray v.*

*Maryland Dep't of Trasnp.*, 741 F.3d 480, 483 (4th Cir. 2014) (explaining that a plaintiff "cannot seek . . . monetary relief from . . . the MTA"). Accordingly, the Eleventh Amendment bars Hayes from seeking *monetary* relief under the ADA and FMLA against Defendant MTA.

Hayes, however, also seeks prospective injunctive relief in the form of reinstatement. (Am. Compl. 27.) As an exception to Eleventh Amendment immunity, plaintiffs may seek prospective injunctive relief against state officials acting in violation of federal law. *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004). This exception, known as the *Ex Parte Young* exception, was articulated by the United States Supreme Court in *Ex Parte Young*, 209 U.S. 123, 28 S. Ct. 441 (1908) and allows private citizens to petition federal courts to enjoin State officials in their official capacities from engaging in future conduct that would violate a federal statute or the Constitution. In *Bland v. Roberts*, 730 F.3d 368 (4th Cir. 2013), the United States Court of Appeals for the Fourth Circuit explained that "[b]ecause reinstatement is a form of prospective relief, the refusal to provide that relief when it is requested can constitute an ongoing violation of federal law such that the *Ex parte Young* exception applies." *See also Royster v. Gahler*, 154 F. Supp. 3d 206, 231 (D. Md. 2015) (finding the defendant was not entitled to Eleventh Amendment immunity because the Plaintiff sought reinstatement.) Accordingly, the State Defendants are not immune from Plaintiff's claims to the extent she seeks injunctive relief in the form of reinstatement.

### b. Administrative Exhaustion

Defendants argue that many of Hayes' claims are barred because she failed to include them in her her Amended Charge of Discrimination. (Def.'s Mem. Mot. 15.) To properly

bring a lawsuit alleging discrimination or retaliation in violation of Title VII, the plaintiff "must first file an administrative charge with the EEOC within a certain time of the alleged unlawful act." *Chacko v. Pateuxent Inst.*, 429 F.3d 505, 508 (4th Cir. 2005) (*citing* 42 U.S.C. § 2000e-5(e)(1)). This requirement "ensures that the employer is put on notice of the alleged violations" and facilitates administrative resolution of claims. *Dydnor v. Fairfax County*, 581 F.3d 591, 593 (4th Cir. 2012). The "failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal court of subject matter jurisdiction over the claim." *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009).

In a lawsuit following an EEOC charge, a federal court may only consider the allegations included in the charge. *Balas v. Huntington Ingalls Industries, Inc.*, 711 F.3d 401, 407 (4th Cir. 2013). Claims that "exceed the scope of the EEOC charge, and any changes that would naturally have arisen from an investigation thereof, are procedurally barred." *Id.* at 407-08 (*quoting Chacko*, 429 F.3d at 506). Allegations which appear for the first time in the Complaint satisfy the administrative exhaustion requirement so long as they are "reasonably related" to the facts contained in the administrative charge. *Sydnor*, 681 F.3d at 595. Administrative charges which feature "different time frames, actors, and conduct" than those contained in a subsequently filed Complaint do not meet the requirement. *Chacko*, 429 F.3d at 506. The same standard governs Title VII, ADA, and Maryland state discrimination claims. *Thompson v. Golden M Co.*, WDQ-14-3254, 2015 WL 3888753, at *3 (D. Md. June 22, 2015); *Snead v. Bd. Of Educ. Of Prince George's Cnty.*, 815 F. Supp. 2d 889, 894 (D. Md. 2011).

Hayes' Amended Charge of Discrimination includes the following factual assertions to support her claims: in July 2016, Terri Gorman denied Hayes' request to switch days off

with another employee, but permitted David Powell to do so; in March 2016, Gorman refused Hayes' request to provide only one-hour notice before taking a leave of absence instead of two-hour notice as her employer required; in November 2016, Sean Adgersen and James Newton suspended Hayes' employment while she was taking sick leave; upon returning to work in January 6, 2017, she was informed that she had resigned from her position; she was denied a reasonable accommodation; she was not paid during her sick leave; and she was suspended and discharged in retaliation for engaging in a protected activity in violation of Title VII. (Def.'s Ex. 1, Attach. 2, ECF No. 17-4.) On the form provided by the EEOC, Hayes checked boxes next to Retaliation, Sex, and Disability. (*Id.*) Charitably construed, Hayes' EEOC Charge alleges that her employer violated Title VII by denying her requests for scheduling modifications while granting similar requests to a male co-worker; failed to accommodate her disability; and interfered with her FMLA leave by refusing her request to provide short notice for her leave of absences; and that she faced retaliation for pursuing FMLA leave and seeking an accommodation under the ADA.

Hayes' Amended Complaint introduces many new factual allegations to support her claims. Among these new facts, Hayes alleges that she made three internal complaints to various MTA personnel, including Senior Executive Paul Comfort and Senior Executive Peter Tollini about "unlawful employment action" and "prohibited employment practices." (Am. Compl. ¶¶ 10, 12, 22.) The EEOC charge did not provide adequate notice of these internal complaints. These new facts are unlike anything described in the Charge—the complaints were addressed to individuals whom the Charge did not identify, and they have been proffered to support a new theory that Hayes faced retaliation for making internal

complaints of discrimination. Hayes' Amended Complaint introduces vastly different facts, involving new actors, to support a brand new theory of retaliation. Accordingly, this Court lacks subject matter jurisdiction over Hayes' claims of retaliation based on filing internal complaints.

Hayes Complaint also records her requests to obtain an ergonomic chair, which the MTA subsequently provided to her, and her disapproval upon discovering that a coworker was permitted to sit in it. Very little in the EEOC charge foreshadows such a claim. It involves a new form of requested accommodation and features new actors, all unnamed in the charge: Patricia Johnson, Bart Plano, and Salon Emptage. These new retaliation claims and ADA claims have not been properly exhausted. Accordingly, this Court lacks subject matter jurisdiction over Hayes' claim that her employer failed to accommodate her disability by providing her with a chair in a timely manner as well as her claim that her employer interfered with her ADA accommodation by allowing another employee to sit in her chair.

Other details in Hayes' Amended Complaint, however, merely fill in the gaps of the general assertions in her EEOC charge. Much of Hayes' Amended Complaint focuses on the activities of Sean Adgerson, Terri Gorman, James C. Newton, and David Powell—all named in her administrative charge. The relevant matter contained in this *pro se* Complaint concerns the same type of discrimination alleged in her EEOC charge, including instances in which Hayes experienced problems securing leave from work or was allegedly retaliated against for pursuing FMLA leave. Accordingly, Hayes' claims under the ADA, Title VII, FMLA, and MFEPA based on her requests for leave, scheduling problems, her suspension,

and retaliation are not precluded by a failure to satisfy administrative exhaustion requirements.[5]

### c. Discrimination Claims under Title VII and MFEPA

Defendants next contend that the Complaint fails to allege sex discrimination under Title VII or MFEPA. As the United States Court of Appeals for the Fourth Circuit recently explained in *Swaso v. Onslow County Bd. of Educ.*, No. 16-2347, 698 Fed. App'x. 745 (4th Cir. Aug. 10, 2017), a plaintiff may establish discrimination under Title VII by showing direct or circumstantial evidence that the plaintiff's status in a protected class was a motivating factor in an adverse employment action, or by relying on the burden-shifting scheme established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Swaso*, 698 Fed. App'x. at 747 (citing *Holland v. Wash. Homes, Inc.*, 487 f.3d 208, 213-14 (4th Cir. 2007)). Under the *McDonnel Douglas* framework, the plaintiff must first make out a *prima facie* case of discrimination by showing that (1) she is a member of a protected class; (2) her or his job performance was satisfactory; (3) she was subjected to an adverse employment action; and (4) "the adverse employment action occurred 'under circumstances giving rise to an inference of unlawful discrimination' [which can be] met if 'similarly-situated employees outside the protected class received more favorable treatment.'" *Id.* (quoting *Adams v. Tr. of Univ. of N.C.-Wilmington*, 640 F.3d 550, 558 (4th Cir. 2011); *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004)).

---

[5] Some assertions in the Complaint are immaterial for other reasons. Hayes' reference to an incident involving a fatal accident under the heading "Claim Five" does not support any of her claims. (Compl. ¶¶ 62-71.) Moreover, Hayes' references to confidential settlement communications are not pertinent to this matter.

While a plaintiff does not need to plead a *prima facie* case to survive a motion to dismiss, she must meet the ordinary pleadings standard under *Twombly* and *Iqbal*. *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 584-85 (4th Cir. 2015) (explaining that a plaintiff is still "required to allege facts to satisfy the elements of a cause of action" under Title VII); *Johnson v. Lemonds*, No. 1:15-cv-410, 2016 WL 447494 (M.D.N.C. Feb. 4, 2016) (summarizing the tension between *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), holding that a plaintiff does not need to plead a *prima facie* case of employment discrimination at the motion to dismiss stage, with the subsequent holdings in *Iqbal* and *Twombly* that a complaint must include sufficient factual matter to plead a plausible claim). An adverse action necessary to support a discrimination claim is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Swaso v. Onslow County Bd. of Educ.*, 698 Fed. App'x 745, 748 (4th Cir. 2017) (*quoting Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011).

In this case, Hayes alleges that she was not permitted, on at least one occasion, to trade time off from work with other employees while a male colleague was permitted to take several days off. (Am. Compl. ¶¶ 38-45.) The MTA's alleged unfair refusal to allow Hayes to trade days off does not amount to an adverse action. Hayes' Complaint does not discuss how frequently her requests of this kind were denied, nor does she allege that her denied request to trade time off resulted in a significant change in benefits, salary, or status. Instead, she asserts that one such request was approved on July 5, 2016, and that "subsequently, I was denied [sic] to trade days again." (*Id.* at ¶¶ 38-40.) She also explains that Terri Gorman

"altered the trading days agreement policy" to benefit a male coworker, David Powell, but does not explain how Gorman altered the policy or how the alteration affected her ability to obtain leave from work, if at all. (*Id.* at ¶¶ 43-44.) Such vague assertions do not demonstrate that Hayes suffered an adverse action. Accordingly, Hayes' claims of discrimination under Title VII and the MFEPA are DISMISSED.

### d. FMLA Interference

Under "Claim Three" of her Amended Complaint, captioned "Unforeseen FMLA Interference," Hayes asserts that Defendants did not allow her to provide notice of her intent to take leave from work one hour in advance of her shifts. (Am. Compl. ¶¶ 51-52.) Defendants argue, *inter alia*, that their refusal to permit her to call out of work one hour in advance of her shift cannot form a basis for an FMLA interference claim. (Def.'s Mem. Mot. 18-20.)

The FMLA "entitles eligible employees to take up to twelve weeks of unpaid leave in any twelve-month period for qualifying medical or family reasons." *See* 29 U.S.C. § 2612(a) "To establish unlawful interference with an entitlement to FMLA benefits, an employee must prove that: (1) she was an eligible employee; (2) her employer was covered by the statute; (3) she was entitled to leave under the FMLA; (4) she gave her employer adequate notice of her intention to take leave; and (5) the employer denied her FMLA benefits to which she was entitled." *Sherif v. University of Maryland Medical Center*, 127 F.Supp.3d 470, 477 (D. Md. 2015). An employee must provide an employer with notice of unforeseeable leave "as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a). The notice must contain "sufficient information for an employer to reasonably

determine whether the FMLA may apply to the leave request" *Id.* § 825.303(b). "Thus, for example, [c]alling in sick without providing more information will not be considered sufficient notice to trigger an employer's obligations under the act." *Greene v. YRC*, 987 F. Supp. 2d 644, 653 (D. Md. 2013) (quoting 29 C.F.R. § 825.303(b)).

Hayes' allegation that Defendants refused to grant her carte-blanche to call out of work one hour in advance of her shifts fails to establish a plausible FMLA interference claim.[6] Hayes alleges that her surgeon "put something in writing for me to give a one-hour notification when calling out for FMLA" and that Gorman "would not comply with my surgeon's letter." (Am. Compl. ¶¶ 51-52.) By requesting blanket authorization to call out sick one-hour in advance of her shifts, Hayes failed to meet the FMLA's requirement that she provide her employer with sufficient notice and information concerning her requested FMLA leave. Accordingly, Hayes has failed to state a claim for FMLA interference.[7]

### e. Conspiracy under 42 U.S.C. § 1985

To support a claim of conspiracy in violation of 42 U.S.C. § 1985, a plaintiff must show: (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a

---

[6] Hayes also claims that Terri Gorman asked her to "try to change your work hours with David Powell" when she requested a scheduling change that would allow her to begin her shifts at 6 a.m. (Am. Compl. ¶¶ 53-54.) The Complaint does not discuss the result of this conversation or explain whether Hayes ever discussed this option with Powell. Accordingly, this vague assertion fails to state a claim of any type. Finally, Hayes alleges that she was denied FMLA leave on April 13, 2016 but was subsequently approved for FMLA leave for the time period spanning from April 21, 2016 to April 21, 2017. (*Id.* ¶¶ 48-49.) Hayes offers no additional factual information about these occurrences. Accordingly, these allegations fail to support an FMLA interference claim.

[7] The structure of Hayes' Complaint suggests that she is not alleging a violation of the ADA based on her employer's refusal to grant her permission to call out of work one-hour in advance of her shifts. Hayes has confirmed this, writing "[m]y issue with a two-hour call out had nothing to do with ADA." (Pl.'s Opp. 4, ECF No. 21.)

consequence of an overt act committed by the defendants in connection with the conspiracy. *Womack v. Owens*, 736 Fed. App'x 356, 358 (4th Cir. 2018) (*quoting Thomas v. Salvation Army S. Terr.*, 841 F.3d 632, 637 (4th Cir. 2016)). "Allegations of 'parallel conduct and a bare assertion of a conspiracy' are not enough for a claim to proceed." *Id.*

Hayes' Amended Complaint fails to state a plausible claim for conspiracy. Hayes merely alleges that Defendants "acted as a cluster" and adjusted policies, procedures, and work schedules to suit their whims. (Am. Compl. ¶ 8.) This bare assertion, unsupported by any additional factual contentions, cannot suffice to support an allegation that Defendants conspired to deprive her of certain rights.

### f. Individual Defendants

Hayes has sued numerous MTA employees in both their official and individual capacities. These individual supervisors may not be held liable for violations under Title VII, the ADA, FMLA, or MFEPA. *Lissau v. Southern Food Servs., Inc.,* 159 F.3d 177, 180 (41h Cir. 1998) (Title VII); *Baird ex ref. Baird v. Rose,* 192 F.3d 462, 472 (4th Cir.1999) (ADA); *Mattison v. MTA*, RDB-15-1627, 2016 WL 2898020, at *6 (D. Md. May 18, 2016) (FMLA); *Jackson v. Baltimore Police Dep't.*, WDQ-11-3569, 2013 WL 1121412, at *4 n.14 (D. Md. March 15, 2013) (MFEPA). Accordingly, they are dismissed as to all of Plaintiff's claims.

### g. Retaliation Claims

Hayes alleges that Defendants retaliated against her by issuing her a five-day suspension and by terminating her employment. (Am. Compl. ¶¶ 8, 81-93.) Defendants contend that she was suspended based on evidence that she had lied about requiring FMLA leave on November 12, 2016 and that she resigned her employment by failing to contact her

employer for five days while she was absent from work. (Def. Mem. Mot. to Dismiss 20-23.)

When, as in this case, the plaintiff relies upon circumstantial evidence of misconduct in support of a retaliation claim, the burden-shifting framework of *McDonnell Douglas Corp.* applies. (*See* ECF No. 1 at ¶¶ 57-62.) A plaintiff first must establish a *prima facie* case of retaliation by showing that: "(1) he engaged in protected activity; (2) [the employer] acted adversely against him; and (3) the protected activity was causally connected to the adverse action." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007)). Once the employee establishes a *prima facie* case, the burden shifts to the employer to rebut the inference of retaliation. *McDonnell Douglas*, 411 U.S. at 802. Although the employer's burden is not onerous, it must articulate "some legitimate, nondiscriminatory reason" for the adverse employment action. *Id.* Once the employer produces a legitimate, nondiscriminatory reason, the burden returns to the plaintiff to prove that the defendant's stated reason is pretextual. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). To that end, the employee must either show that the employer's explanation is "'unworthy of credence' or . . . offer[] other forms of circumstantial evidence sufficiently probative of" the retaliation. *Mereish v. Walker*, 359 F.3d 330, 332 (4th Cir. 2004); *see also McGrath-Malott v. Maryland*, 565 F. Supp. 2d 656, 670-71 (D. Md. 2008). This same framework governs all of Hayes' potential claims of retaliation. *See Savage v. Maryland*, 896 F.3d 260, 276 (4th Cir. 2018) (Title VII); *Vannoy v. Fed. Reserve Bank of Richmond*, 827 F.3d 296, 304 (4th Cir. 2016) (FMLA); *Hawkins v. Leggett*, 955 F. Supp. 2d 474, 497 (D. Md. June 24, 2013) (MFEPA); *Reynolds v. American Nat. Red Cross*, 701 F. 3d 143, 154 (4th Cir. 2012) (ADA).

Hayes has failed to make out a prima facie case of retaliation with regard to her December 22, 2016 EEOC Charge because she cannot show that her employer retaliated against her for filing this Charge. To establish causation, Hayes must at least show that her employer was aware of her protected activity. *Hooven-Lewis v. Caldera*, 249 F.3d 259, 278 (4th Cir. 2001); *Gibson v. Old Town Trolley Tours of Washington, D.C., Inc.*, 160 F.3d 177, 182 (4th Cir. 1998). Defendants argue that they were not aware of the Charge until after Hayes' employment with the MTA ended. (Def.'s Mem. Mot.to Dismiss 20.) They have produced the Affidavit of Bart P. Plano, Chief EEOC Compliance Officer, which claims that his office did not receive notice of the charge until February 3, 2017. (Aff. of Bart P. Plano at ¶ 7, ECF No. 17-2.) Email correspondence from the EEOC dated February 3, 2017 notifying Plano of Hayes' Charge corroborates the claim. (ECF No. 17-3.) Hayes has produced nothing to challenge this evidence. Accordingly, any claim of retaliation based upon her EEOC Charge is unavailing.

Hayes, however, has established a prima facie case of retaliation based on pursuing FMLA leave. Close temporal proximity between protected activity and an adverse action suffices to establish a prima facie case of retaliation. *Yashenko v. Harrah's N.C. Casino Co., LLC*, 446 F.3d 541, 551 (4th Cir. 2006). Here, the record supports Hayes's claim that her employer approved her for FMLA leave sometime in December 2016 or January 2017 and that she was scheduled to return to work on January 4, 2017. She was suspended in December 2016, and her employment was terminated in January 2017. Because Hayes engaged in protected activity (taking FMLA leave), was suspended, and ultimately lost her job all within a two-month period, she has established a prima face case of retaliation.

Nevertheless, Hayes has failed to establish that Defendants' proffered explanations for her suspension were pretextual. Defendants argue that her employment was suspended because the MTA had evidence that she attended a party at Pimlico Racetrack while claiming to require FMLA leave. (Def.'s Mem. Mot. 21; Aff. of Bart Plano at ¶ 8.) James C. Newton, Sr., the MTA Deputy Director of the Office of the Operations Control Center, attests that in November 2016, his office obtained a picture of Hayes attending a party in spite of her representations that she required FMLA leave at the time. (Aff. of James C. Newton, Sr. at ¶ 6.) Defendants have produced this picture. (Def.'s Ex. 2, Attach. 3, ECF No. 17-11.) The photograph purportedly shows Hayes wearing black clothes, as required by the event organizers. (*Id.*; Def.'s Ex. 2, Attach. 2, ECF No. 17-10.) Moreover, Defendants have produced a "Disciplinary Action Appeal Form" under Hayes' signature which alleges that she "did not attend the reunion, I only dropped someone off." (Def.'s Ex. 2, Attach. 3.) In Response, Hayes only disputes the authenticity of the photograph by arguing that it *could have* been manipulated. (Pl.'s Resp. ¶¶ 14-16.) This does not establish a genuine issue of material fact. The evidence clearly supports Defendant's good faith belief to suspend Hayes' employment. Hayes has not produced any evidence to challenge Defendant's proffered explanation. Accordingly, Hayes' retaliation claims arising from her suspension cannot survive summary judgment.

Finally, Hayes has failed to produce evidence to challenge her employer's explanation for her employment termination. Defendants argue that Hayes effectively resigned from her employment by remaining absent from work without contacting her employer. (Def.'s Mem. Mot. 22.) They have provided a contemporaneous letter from the MTA explaining

her dismissal on these grounds. (Def.'s Ex. 1, Attach. 4, ECF No. 17-6.) Hayes has not produced evidence of any kind to refute this assertion. Accordingly, Hayes has not met her burden to show that there is a genuine issue of fact with regard to her claims of retaliatory termination. Because Hayes has failed to muster any evidence to challenge her employer's proffered explanations for her suspension and employment termination, her retaliation claims under any theory—whether under the ADA, the FMLA, Title VII, or the MFEPA— must fail.

## II.     Motions to Strike Affidavits and Leave to File Sur-reply

Finally, Hayes has filed a Motion for Leave to File a Sur-reply. In general, parties are not permitted to file sur-replies. Local Rule 105.2(a) (D.Md.2011). A party moving for leave to file a sur-reply must show a need for a sur-reply. *Id.* If a defendant raises new legal issues or new theories in its reply brief, there is a basis to permit a plaintiff to file a sur-reply. *TECH USA, Inc. v. Evans*, 592 F.Supp.2d 852, 862 (D. Md. 2009); *Interphase Garment Solutions, LLC v. Fox Television Stations, Inc.*, 566 F.Supp.2d 460, 466 (D. Md. 2008). Moreover, "[s]urreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." S*ee Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003).

Defendants have raised no new issues in their Reply, but have merely challenged the arguments set forth in Plaintiff's Response. Moreover, Plaintiff seeks to submit her Sur-reply not to address new issues raised by Defendants, but to further discuss the allegations of her Complaint and submit additional legal authorities—all steps she could have taken in response to Defendants' Motion. Accordingly, Plaintiff's Motion is DENIED.

Finally, Hayes has moved to strike the affidavits of James C. Newton and Bart P. Plano. Hayes has provided no legal basis for striking these affidavits, but merely disputes the factual allegations contained in them. Accordingly, these Motions are DENIED.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss, or, in the Alternative, for Summary Judgment (ECF No. 17) is GRANTED. Specifically, Summary Judgment is ENTERED in favor of Defendants with respect to Hayes' ADA, FMLA, Title VII, and MFEPA retaliation claims. All of Hayes' remaining claims under the ADA, FMLA, Title VII, MFEPA, and 42 U.S.C. § 1985 are DISMISSED. Plaintiff's Motions to Strike Affidavit of James C. Newton, Sr. (ECF No. 22) and Affidavit of Bart P. Plano (ECF No. 23) are DENIED. Plaintiff's Motion for Leave to File Sur-reply (ECF No. 28) is DENIED.

A separate order follows.

Dated:          November 6, 2018


                                        _____/s/_____
                                        Richard D. Bennett
                                        United States District Judge